Matías Graniela, demandante y apelado, *v.* Yolande, Inc., y United States Fidelity & Guaranty Company, demandadas y apelantes. Primitivo Acosta Graniela y su esposa María Tomasa Ramírez, demandantes y apelados, *v.* Las Mismas, demandadas y apelantes. Ana Rosa Acosta Ramírez, demandante y apelada, *v.* Las Mismas, demandadas y apelantes.

Núm. 8999.—*Sometido:* Enero 19, 1945. *Resuelto:* Mayo 31, 1945.

108

*J. Alemañy Sosa,* abogado de las apelantes; *A. Ramírez Silva* y *Fernando Zapater,* abogados de los apelados.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Este recurso envuelve tres pleitos de daños y perjuicios que por tener su origen en el mismo accidente fueron sometidos en la corte inferior por la misma prueba y consolidados en este Tribunal.

Yolande, Inc., una corporación dedicada a la industria de la aguja, allá por el primero de julio de 1940 era dueña de un automóvil Mercury que utilizaba la gerente de la corporación para trasladarse a los distintos sitios de la Isla en asuntos del negocio, y que a la vez era utilizado para otros asuntos de la corporación cuando así lo ordenaba la gerente. Como a las ocho de la noche del día indicado, mientras el automóvil en cuestión era guiado por la carretera que de San Germán conduce a Mayagüez, por Enrique Ramos Candelario, chófer de la demandada, como a seis o siete kilómetros de Mayagüez fué tan negligentemente guiado que uno de sus guardabarros chocó con la baranda del puente de Río Hondo, rebotando hacia una torre que soporta alambres de corriente eléctrica y de allí fué lanzado sobre cinco señoritas que caminaban por la carretera en la misma dirección en que venía el automóvil, produciendo la muerte de cuatro de ellas e hiriendo gravemente a la otra. La corte inferior dictó sentencia a favor de los demandantes: en uno de los casos, Matías Graniela, padre de dos de las jóvenes muertas; en otro, Primitivo Acosta Graniela y su esposa, padres de las otras dos jóvenes que fallecieron; y en el tercero Ana Rosa Acosta Ramírez, quien demandó por su propio derecho por las lesiones que recibió.

En este recurso las demandadas Yolande, Inc., y la compañía aseguradora del automóvil, expresamente admiten

en su alegato que la primera era la dueña del automóvil; que el chófer que lo guiaba en el momento del accidente era su empleado, y que la causa próxima del accidente fué la negligencia del chófer. Niegan, sin embargo, que mientras guiaba esa noche el automóvil, el chófer estuviese actuando en gestiones de la corporación. Por el contrario alegan que había actuado en desobediencia de las órdenes expresas que le dió la gerente como a las seis de la tarde de ese día para que guardase el automóvil en su garage, y que contrario a esas órdenes el chófer se fué de paseo con unos amigos hasta el pueblo de Cabo Rojo, sucediendo el accidente mientras regresaba. Con estas admisiones de las demandadas, la única cuestión en controversia es si en los momentos en que ocurrió el accidente el chófer estaba actuando dentro del ámbito de su empleo.

La prueba de los demandantes, en adición a la forma en que ocurrió el accidente, es al efecto de que, una vez ocurrido éste, el chófer se dió a la fuga; que uno de los demandantes y otros testigos que llegaron al sitio del accidente inmediatamente después de ocurrido éste, vieron en la parte de atrás del automóvil varios paquetes relativamente grandes envueltos en papel. Este último detalle está corroborado por la declaración de un testigo de los demandantes, quien manifestó que mientras él se hallaba en las afueras de Cabo Rojo, arreglando una goma de un camión, llegó a aquel sitio el chófer de la demandada, estacionando allí su automóvil; que el testigo le pidió prestado una bomba, a lo cual contestó el chófer que él tenía una, pero que le era imposible facilitársela porque tenía que salir inmediatamente para Mayagüez a llevar unos paquetes para la casa con quien trabajaba; que en aquellos momentos vió que una muchacha que estaba parada en la acera opuesta cruzó la calle con varios paquetes envueltos en papel, los cuales recibió el chófer, colocándolos en su automóvil y siguiendo viaje con rumbo a Mayagüez. Por último, declaró por los demandan-

tes el policía Arbona, manifestando que al presentarse en la casa del chófer con el propósito de arrestarlo, como a las dos de la mañana del día dos de julio, estaba el chófer sentado en un sofá con las puertas de la casa abiertas y las luces encendidas; que al entrar el policía a la casa, el chófer le dijo que sabía que venía a arrestarlo, pero que le suplicaba que lo protegiera porque temía ser atacado por los familiares de las víctimas del accidente; que la culpa de lo que había pasado la tenía la gerente de la corporación, por haberlo mandado a Cabo Rojo a buscar unos trabajos de costura cuando acababa de llegar de un viaje desde San Juan. Las demandadas objetaron a la parte de la declaración del policía que repetía las supuestas manifestaciones del chófer, admitiéndola la corte fundándose en que eran parte del *res gestae*.

En apoyo de su recurso, las demandadas alegan que la sentencia debe ser revocada principalmente porque no existe prueba alguna de que al ocurrir el accidente el chófer estuviese actuando dentro del ámbito de su empleo. En apoyo de su contención alegan que la parte de la declaración del policía por ellas objetada era inadmisible, y que descartándola, sólo restaba la prueba de los demandantes referente a los paquetes que traía el chófer de Cabo Rojo en los momentos del accidente. Con respecto a esta última prueba, presentaron evidencia al efecto de que personas que fueron al sitio del accidente poco después de ocurrido éste, no vieron en el automóvil los paquetes. Además presentaron la declaración de la encargada de la sucursal de la demandada en Cabo Rojo al efecto de que los trabajos que se hacían allí eran llevados a la casa principal en Mayagüez en una guagua que la compañía tenía dedicada a ese fin, que era guiada por otro chófer, y cuando no eran transportados en la guagua eran llevados por la testigo personalmente; pero que ni en la fecha del accidente, ni en ninguna otra, el chófer Ramos Candelario transportó trabajos para la demandada.

Si consideramos que habían transcurrido seis horas desde que ocurrió el accidente hasta que el chófer fué arrestado, y especialmente si tomamos en cuenta la preocupación del chófer por la persecución de que temía ser objeto por parte de los familiares de las víctimas, resulta claro que la manifestación que hizo el chófer al policía inculpando a la gerente de la corporación, no fué una manifestación espontánea, sino que fué hecha con miras de defenderse, tratando de justificar su conducta en relación con el accidente con el esfuerzo físico que tuvo que hacer para inmediatamente después de llegar de un viaje de San Juan hacer otro hasta Cabo Rojo en busca de los materiales. No siendo espontáneas las manifestaciones del chófer, y siendo la espontaneidad elemento indispensable para que manifestaciones de esta naturaleza puedan ser admisibles como parte del *res gestae*, tenemos que concluir que erró la corte al admitir, sobre la objeción de las demandadas, las manifestaciones en cuestión. *Montaner, Admor.* v. *Comisión Industrial*, 54 D. P.R. 781 (1939); *Torres* v. *Domínguez Conde*, 35 D.P.R. 267 (1926); 6 Wigmore *on Evidence* (3ª. ed.), sec. 1750, pág. 142.

Pero descartando la prueba de las manifestaciones indebidamente admitidas como parte del *res gestae*, de la admisión por parte de las demandadas al efecto de que el automóvil era propiedad de Yolande, Inc., surge la presunción de que en los momentos de ocurrir el accidente el chófer—quien se admite era empleado de la demandada—estaba actuando dentro del ámbito de sus funciones. *Aponte.* v. *Palacios*, 55 D.P.R. 697 (1939); *Morales* v. *Otero*, 53 D.P.R. 569 (1938); *Lotti* v. *The Charles McCormick Lumber Co.*, 51 D.P.R. 334 (1937); *Sánchez* v. *Asiatic Petroleum Co.*, 40 D.P.R. 104 (1929); *Guzmán López* v. *Ortiz*, 39 D.P.R. 184 (1929); Monografía, 42 A.L.R. 898.

Esta presunción, desde luego, puede ser controvertida por prueba de la parte demandada. Como hemos visto, las

demandadas presentaron evidencia con ese objeto. Si esa evidencia por ellas presentada no hubiera sido contradicha por la parte demandante—a menos que por su naturaleza o por ser físicamente imposible no fuese digna de crédito—se impondría la revocación de la sentencia. 42 A.L.R. 898, 908. Pero en el presente caso la evidencia de las demandadas fué contradicha por la prueba de los demandantes referente a la existencia de los paquetes que se alega el chófer recibió en Cabo Rojo para conducirlos a Mayagüez, a la cual la corte dió entero crédito. Y como la corte vió y oyó declarar a los testigos, por lo cual está en mejores condiciones que nosotros para apreciar su credibilidad, y no siendo físicamente imposibles las declaraciones de los testigos de los demandantes, no debemos sustituir nuestro juicio por el de la corte inferior, quedando así en pie la presunción a favor de los demandantes.

 Réstanos ahora considerar el montante de los daños y la razonabilidad de la cuantía concedida por concepto de honorarios de abogado. En el pleito seguido por Matías Graniela se concedieron $4,500 por los sufrimientos mentales que tuvo el padre por la pérdida de cada una de sus hijas, o sea un total de $9,000. Y la misma cantidad se concedió en el pleito seguido por Primitivo Acosta Graniela por la pérdida de sus dos hijas. En lo que respecta a Ana Rosa Acosta Ramírez, la corte le concedió $500. Como honorarios de abogado concedió $900 por cada uno de los dos primeros pleitos, y $150 por el tercero—un total de $1,950. Arguyen las demandadas que la cantidad concedida por concepto de daños y perjuicios es exagerada. No hay razón alguna que nos justifique intervenir con la discreción de la corte inferior. Las sumas concedidas por concepto de daños no son exageradas, sobre todo si se tiene en cuenta la tendencia actual de esta Corte de dar compensaciones más altas que las que se concedían anteriormente. *Mercado* v. *American Railroad Co.*, 61 D.P.R. 228 (1943); *Castro* v.

*González,* 58 D.P.R. 368 (1941). En lo que respecta a la compensación concedida a Ana Rosa Acosta Ramírez, lejos de ser exagerada, la consideramos más bien insuficiente, teniendo en cuenta la gravedad de las lesiones recibidas por ella; pero como no estableció recurso de apelación, no podemos alterar la sentencia.

En lo que respecta a los honorarios de abogado, su cuantía es sin duda exagerada. Si se tiene en cuenta que los tres pleitos envolvían exactamente la misma cuestión, que fueron vistos por la misma prueba, y que requirieron un solo esfuerzo por parte de los abogados, la compensación de $1,950 no debe sostenerse, y reducirse a la cantidad de $1,150: $500 para cada uno de los dos primeros pleitos, y $150 para el tercero.

*Así modificada, debe confirmarse la sentencia apelada.*