Elisa Tavárez Vda. de Storer, demandante y apelada, *v.* San Juan Lodge Number 972 Benevolent and Protective Order of Elks, conocida por Elks Club Assoc., demandada y apelante.

Núm. 9621.—*Sometido:* Abril 14, 1948. *Resuelto:* Mayo 7, 1948.

*F. Prieto Azúar,* abogado de la apelante; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelada.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Durante varios años la demandada "San Juan Lodge Number 972 Benevolent and Protective Order of Elks" tuvo por costumbre celebrar, el viernes de cada semana, partidas de Bingo en el edificio que constituye su domicilio local, situado en la Avenida de las Nereidas, en Santurce. Por asistir a esos juegos ella cobraba $1.25 a cada persona, reservándose el 25 por ciento del monto total obtenido por tal concepto para levantar fondos con que dar fiestas a los hombres de las fuerzas armadas, para cooperar con instituciones como los Niños Escuchas, las Estaciones de Leche, El Pueblo del Niño, la Cruz Roja Americana y la Liga Contra el Cáncer, para sufragar los propios gastos de tales juegos y para mejorar la planta física de la institución. Frente al citado edificio existe una calzada de concreto como de 14 pies de ancho en forma semicircular o de media elipse, que empezando en la acera junto al extremo oeste del solar, pasa por debajo de la marquesina que tiene el edificio en la parte que da a la Avenida de las Nereidas, y termina en la misma acera, al extremo izquierdo del solar. Entre esa calzada y la acera existe un espacio comparativamente pequeño, tam-

bién en forma de media elipse, dividido en el centro por una segunda calzada que en ángulo recto conduce de la indicada acera a la marquesina. Ese espacio así dividido está de ½ a 1½ pulgadas sobre el nivel de la calzada y la acera. Tiene en sus bordes un pequeño encintado de concreto de la altura ya especificada y el día a que inmediatamente pasaremos a referirnos no estaba sembrado de grama ni de flores, no tenía setos vivos o muertos, como tampoco bancos, parasoles o letreros indicativos de que la demandada prohibiera que por allí se transitara. Tampoco estaba cubierto con cemento y el terreno que le cubría era totalmente arenoso. Ha sido calificado de "reata" por la demandada.

En la noche del viernes 10 de septiembre de 1943 la demandante Elisa Tavárez Vda. de Storer, acompañada de su amiga Carmen Henares de Denton, acudió en el automóvil de ésta al referido local de la demandada con el propósito de participar, al igual qué en otras ocasiones lo había hecho, de la partida de Bingo que entonces se celebraría. A su llegada la Sra. Denton situó su automóvil en la calzada semicircular ya descrita, junto al extremo derecho entrando de la marquesina. Era alrededor de las 8 y en seguida se dirigieron a la planta baja del edificio, donde participaron del juego celebrado en unión a 800 o más personas que allí habían acudido con idéntico propósito. A la terminación de éste, entre 10:30 y 11 de la noche, la demandante y su amiga, al igual que las demás personas que allí estaban, muchas de las cuales habían empezado a llegar desde las 5:30 p.m., trataron de salir prontamente por las dos puertas que tiene el edificio de la demandada frente a la Avenida. Al llegar a su automóvil la Sra. Denton ocupó asiento junto al guía, en la parte delantera izquierda del vehículo. Como en la calzada había en aquel momento numeroso público y varios otros automóviles, la demandante, a fin de sentarse al lado derecho de su amiga, decidió dar la vuelta por detrás del vehículo. Con tal objeto empezó a caminar por el espacio semicircular

yermo antes descrito, con tan mala fortuna, que introdujo su pierna derecha en un pequeño hoyo de poco más de 20 pulgadas de profundidad que allí había para la llave de paso de la tubería que suministra agua al edificio. La demandante cayó al suelo, pero fué prontamente recogida por varias personas y colocada en el asiento trasero del automóvil de su amiga. Trasladóse luego a su casa, donde permaneció algún tiempo recluída en cama. Por razón de las lesiones recibidas presentó demanda de daños y perjuicios contra la San Juan Lodge Number 972 Benevolent and Protective Order of Elks. Visto el caso en sus méritos el Tribunal de Distrito de San Juan declaró con lugar la demanda y condenó a la demandada al pago total de la suma de $2,017, de los cuales $250 correspondían a honorarios de abogado. No conforme, la demandada ha apelado y señala en su alegato siete errores, los cuales discutiremos en el curso de esta opinión.

 Insiste en primer lugar en que el tribunal inferior cometió error de derecho al no permitir evidencia sobre el uso de la "reata" o *grassplot* que cruzara la demandante. No existe tal error. En relación con la llamada reata se le preguntó por el letrado de la demandada a la Sra. Denton: "¿Para qué cree Ud. que está destinado ese lugar en el edificio?" El abogado de la demandante se opuso y la corte sostuvo la objeción. No vemos, sin embargo, en qué pudo ser perjudicada la demandada con esta actuación del tribunal inferior cuando posteriormente a la misma testigo se le preguntó si había yerba sembrada dentro de ese pequeño lugar y ella contestó que no, y además cuando en relación con la misma cuestión Rafael Bird, Secretario de la demandada, manifestó que los Elks destinaban esa reata a sembrar grama. De ordinario, un testigo debe declarar únicamente sobre hechos que le consten de propio y personal conocimiento y a éstos no debe permitírseles que expongan sus creencias u opiniones. La pregunta hecha a la testigo era evidentemente inadmisible, por lo que tampoco se cometió error al no per-

mitirse que fuera al récord el incidente, según lo autoriza la Regla 43(*c*). La evidencia resultaba claramente inadmisible.[1]

 En segundo lugar arguye la demandada que el tribunal de distrito cometió error al permitir que una simple enfermera diese testimonio sobre cuestiones médicas de carácter técnico. *Natividad de Jesús* manifestó que es enfermera graduada y que en la mañana del 11 de septiembre de 1943 fué llamada para asistir a la demandante; que la encontró en cama y vió que ésta tenía la pierna derecha con una fuerte contusión y laceración desde la rodilla hasta abajo. No vemos en verdad por qué esta testigo, que tenía experiencia en ese campo no podía declarar sobre cosas tan elementales como contusiones y laceraciones. Según dijimos en *Yordán* v. *Ríos,* ante, pág. 259, ''Cualquier referencia incidental en términos técnicos usados por el demandante, tales como golpes en la 'tibia', inflamación, dolores en los tendones y el uso de 'diatermia' son tan conocidos y de uso corriente que no implican que tuviera que ser un perito el único que pudiera usarlos.'' Además, la demandante también presentó como testigo al *Dr. Manuel Pavía Fernández* y éste corroboró a la testigo De Jesús sobre las lesiones recibidas por la demandante.

 Seguidamente pasa la demandada a señalar como error de derecho cometido por el tribunal inferior el haber éste admitido evidencia sobre un supuesto contrato de seguro: (*a*) por no ser ésa una cuestión que estuviera en controversia y (*b*) por tratarse de una copia carbón que no fué adecuadamente identificada y que fué introducida al único fin de demostrar que existía una fuente adicional de resarci-

---

[1] ''Regla 43(*c*).—*Récord de Evidencia Excluída.*—En cualquier acción, si se sostuviere por la corte una objeción a una pregunta formulada a un testigo, el abogado que lo interroga puede solicitar y la corte ordenará que se haga un récord completo de la evidencia que trate de elucidarse por medio de dicha pregunta objetada, a menos que claramente aparezca que la evidencia es inadmisible por cualquier razón o que se trata de un testigo privilegiado.''

miento. Mientras desfilaba la prueba de la demandante ocupó la silla testifical el Lic. Antonio E. Simonpietri, quien manifestó ser gerente del Departamento de Reclamaciones de la Maryland Casualty Co. Preguntado si esa Compañía tenía algunas relaciones de negocios con la demandada, el abogado de ésta se opuso a la pregunta y el tribunal admitió el testimonio. Posteriormente se ofreció y admitió en evidencia una póliza de seguros tendiente a demostrar que mediante la misma la demandada había tratado de protegerse de riesgos provenientes de accidentes similares al ocurrido a la demandante. Prueba testifical y documental a ese efecto era claramente irrevelante. El hecho de que la demandada estuviera o no asegurada no aumentaba ni disminuía su responsabilidad. Por ejemplo, si una persona que conduce un vehículo lesiona a un viandante su responsabilidad dependerá de las circunstancias concurrentes y no del hecho de que esté o no asegurada. Por otro lado, la copia a carbón de la póliza era claramente inadmisible, no habiéndose hecho gestiones para obtener de la demandada el original de la misma. Artículo 85, Ley de Evidencia.(²) Sin embargo, la comisión de este error no da lugar a la revocación, pues, según ya hemos indicado, en casos de daños y perjuicios la responsabilidad de un demandado depende de las circunstancias que concurran y no del hecho de que él haya obtenido o no una póliza de seguros para cubrir un riesgo similar al sufrido con motivo del accidente.

■ Como cuarto señalamiento alega la demandada que fué un error permitir que se contestara una pregunta sugestiva, contra la reiterada objeción de ella, sobre la vitalísima cuestión del aviso previo sobre el supuesto peligro. Este error tampoco existe. A la testigo Sra. Denton se le preguntó por el letrado de la demandante si "en relación con

---

(²)"Artículo 85.—Si un documento escrito estuviere bajo la custodia de alguien, deberá concedérsele a éste un término razonable para presentarlo; y si entonces dejare de hacerlo, el contenido del documento podrá probarse como si se hubiere extraviado. . . . ."

el hoyo a que nos hemos venido refiriendo había allí algún letrero u objeto alguno que indicara la presencia de ese hoyo.'' Contestó ella negativamente. Se le preguntó una vez más ''si se había anunciado por alguna persona de los Elks al público la presencia de ese hoyo allí'', y la demandada en ese momento se opuso por ser sugestiva la pregunta. Entonces el abogado de la demandante manifestó ''Está bien.'' Y preguntó a la testigo ''¿Alguna persona hizo advertencia alguna sobre algún peligro o algo?'', contestando la testigo ''Ninguna''. A la propia demandante viuda de Storer se le hizo una pregunta similar y ella la contestó negativamente, sin que la demandada hiciera objeción. Por consiguiente, no sólo por haber la testigo Sra. Denton contestado varias preguntas sobre el particular, sí que también por haberse permitido, sin objeción alguna, que la propia demandante declarara sobre el mismo asunto, la demandada está impedida de levantar la cuestión como error.

██ Igualmente sostiene la demandada que fué un error del tribunal de distrito llegar a la conclusión de que la Logia demandada, no obstante ser admitidamente una institución de fines caritativos y patrióticos, incurrió en negligencia por la cual debía responder, tal cual si se tratase de una empresa de lucro. Tampoco ha habido error a este respecto. En el pasado los tribunales con frecuencia resolvieron que las instituciones caritativas no eran responsables de daños y perjuicios. Cf. *Candal* v. *Sociedad Auxilio Mutuo*, 37 D.P.R. 874. Sin embargo, la tendencia moderna es en el sentido de hacer responsables a tales instituciones cuando éstas por acción u omisión causan daño a un semejante. Véanse 10 Am. Jur., sección 143, pág. 690; 133 A. L.R. 809, 819 y la monografía que aparece a las págs. 821 y siguientes, y *Klopp* v. *Benevolent Protective Order of Elks*, 33 N.E.2d 161. Además, opinamos que la demandada, dadas las circunstancias que concurren en este caso, no puede ser considerada como una institución caritativa. Verdad es que

según sus artículos de Incorporación ella se organizó "con el fin de constituir una asociación que no tiene por objeto un beneficio pecuniario". Sin embargo, la prueba demostró que la demandada cobraba una cuota de $1.25 a toda persona que asistía a las partidas de Bingo; que ella sólo repartía el 75 por ciento del monto total por concepto de entrada; que retenía un 25 por ciento bruto que utilizaba en la forma que ya hemos indicado; que con el beneficio neto obtenido mejoró su planta física, compró cuatro magníficos billares para el exclusivo solaz de sus socios; y que estableció una cantina para las personas que jugaban Bingo, obteniendo también en esta forma beneficios adicionales. Bajo estas condiciones debe resolverse que, a los fines de una acción de daños y perjuicios, la demandada no puede ser considerada como una institución caritativa. En el caso de *Carrasquillo* v. *Am. Missionary Association,* 61 D.P.R. 867, estuvo envuelta la responsabilidad de un hospital que presta servicios en gran parte a gente pobre y a las cuales no cobra por tales servicios, y que a la vez atiende a personas pudientes y a las cuales cobra por sus servicios. Se resolvió que el mismo debía responder de los daños y perjuicios ocasionados. En él se distinguió el caso de *Candal* v. *Auxilio Mutuo,* supra. Si bien podría hacerse sustancialmente la misma distinción en éste, preferimos hacer constar claramente en este momento que el caso de *Candal,* en cuanto a la cuestión específica que aquí discutimos, debe considerarse ahora expresamente revocado.

En su sexto señalamiento imputa la demandada al tribunal inferior el haber errado "al concluir que la demandante no incurrió en negligencia contributoria al transitar por la reata o *grassplot,* que era un lugar no destinado al tránsito de personas y que no formaba parte de las facilidades suministradas a los invitados, asumiendo de ese modo la demandante el riesgo de su acto voluntario."

La prueba revela de que la Sra. Vda. de Storer no se encontraba en el local de la demandada como transgresora o como persona con licencia para ello. Era ella más bien una invitada implícita. Decimos invitada implícita porque si bien la demandada no anunciaba ni en la prensa ni en la radio las partidas de Bingo que iba a celebrar, por lo menos entre un gran número de personas se había corrido la voz de que allí se celebraban tales juegos y la demandada permitía la entrada a semejantes partidas a todas aquellas personas que pagaran la cantidad de $1.25. Por lo general frecuentaban aquel sitio las noches que se jugaba de 800 a 1000 personas y al igual que lo había hecho en ocasiones anteriores la demandante acudió al local de la demandada con su anuencia y conocimiento y para provecho y beneficio de ésta. La responsabilidad del dueño de un establecimiento o espectáculo es mayor cuando se trata de un invitado que cuando se trata de un transgresor o persona con licencia para estar allí. 38 Am. Jur., sección 96, pág. 754; 45 C. J., sección 220, pág. 809. Por otra parte, la prueba creída por el tribunal inferior demostró también que a la salida de las partidas de Bingo se permitía abiertamente a las personas que allí concurrían que transitaran por las referidas reatas sin objeción de clase alguna de parte de la demandada. Bajo estas circunstancias, difícilmente podría imputarse negligencia contribuyente a la demandante. Véanse *Figueroa* v. *Am. Railroad Co.,* 64 D.P.R. 335, 344; *Davidson* v. *H. I. Hettinger & Co.,* 62 D.P.R. 301; *Font* v. *Viking Construction Corporation,* 58 D.P.R. 689, 698; *Restatement of the Law, Torts, Negligence, American Law Institute,* sección 466 y 473, págs. 1230 y 1243.

El último error señalado por la demandada es que el tribunal inferior erró al conceder una idemnización total de más de $2,000, tratándose de una mera laceración que no ha dejado asomo de incapacidad física.

Examinemos el testimonio del Dr. Pavía Fernández para determinar las lesiones sufridas por la demandante. Este testigo nos dice que asistió a la Sra. viuda de Storer allá para el año 1943; que ésta había sufrido un accidente y. en la pierna derecha la piel se le había ido como un pie de largo, tenía una gran destrucción de los tejidos y pequeñas erosiones, al igual que en la pierna izquierda; que también tenía rasguños en los brazos y en los hombros, pero que la herida grande la tenía en la pierna derecha; que donde hay pérdida del tejido superficial las heridas son molestosas y tardan mucho en cicatrizarse; que tales heridas molestan los movimientos de la pierna y arden y duelen; que la herida era justamente encima de la tibia y no podía ser honda porque allí no hay mucho tejido que perder, llegando la herida al hueso casi en seguida; que el dolor que la demandante sintió tuvo que ser intenso; que ésta estuvo en cama de diez a doce días; y que él cobró $100 por sus honorarios. Por los daños físicos sufridos por la demandante y por sus sufrimientos, molestias e inconvenientes el tribunal inferior le concedió la cantidad de $1,200. No hubo error al fijarlos en esa suma. Cf. *Graniela* v. *Yolande, Inc.*, 65 D.P.R. 107.

También concluyó el tribunal a quo que la demandante tenía alrededor de 40 alumnos en su academia de música, que ella se ganaba de $600 a $700 mensuales y que como el accidente ocurrió el 10 de septiembre de 1943 y la demandante se vió obligada a suspender sus clases hasta el día 1º de noviembre del mismo año, ella perdió ingresos correspondientes a dos teceras partes de un mes, o sea alrededor de $467. Si algún error cometió el tribunal inferior al· respecto, éste fué calcular que la demandante había dejado de percibir ingresos por dos terceras partes de un mes, puesto que del 10 de septiembre al 1º de noviembre hay 51 días y no 20. Con ello no se perjudicó a la demandada.

Por servicios médicos se concedió a la demandante la cantidad específica pagada por ella al Dr. Pavía Fernández. *Martínez* v. *Báez*, 63 D.P.R. 783.

▪ En cuanto a los honorarios de abogado, nos parece que el tribunal inferior no estuvo equivocado al fijarlos en la suma de $250. Cf. *Carrasquillo* v. *Am. Missionary Association*, supra, a la pág. 886.

*No habiéndose cometido ninguno de los errores alegados, procede la confirmación de la sentencia apelada.*

El Juez Asociado Sr. De Jesús no intervino.