Dr. A. Palmer López, demandante y apelado, *v.* Eduardo Barreras y La Autoridad de Transporte de Puerto Rico, demandados y apelante el primero.

Núm. 10526.—*Sometido:* Enero 10, 1952. *Resuelto:* Marzo 31, 1952.

*R. Rivera Zayas, G. Rivera Cestero* y *Milton F. Rúa,* abogados del apelante; *Guillermo S. Pierluisi,* abogado del apelado; *B. Meléndez García* y *Hernán S. Pesquera,* abogados de la demandada Autoridad de Transporte.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Se trata de una demanda de daños y perjuicios radicada por el Dr. A. Palmer López contra Eduardo Barreras y la Autoridad de Transporte. Luego de un juicio en los méritos, el tribunal de distrito dictó sentencia a favor del demandante y en contra de Barreras, por la suma de $2,200 más las costas y $300 para honorarios de abogado. La corte desestimó la demanda en cuanto a la Autoridad. Barreras apeló de la sentencia en su contra.

Tal cual los halló probados el tribunal inferior, los hechos son sustancialmente los siguientes: El Dr. Palmer era dueño de una lancha. En septiembre de 1948 celebró un contrato de arrendamiento de mes a mes con la Autoridad para guardar su lancha en una caseta dedicada a guardar botes propiedad de la Autoridad, situada en Isla Grande, en San Juan. El contrato era para usar la tercera parte de la caseta. Posteriormente la Autoridad, sin notificar al Dr. Palmer, quien todavía ocupaba parte de la caseta, le arrendó a Barreras la caseta completa. El nuevo arrendatario empezó a guardar en la caseta un yate de su propiedad mucho más grande que la lancha del demandante. Cuando el Dr. Palmer le informó a Barreras sobre su arrendamiento, Barreras se avino a que el Dr. Palmer continuara guardando su lancha como *arrendatario* de una tercera parte de la misma. El contrato entre el Dr. Palmer y la Autoridad nunca fué rescindido, y la Autoridad continuó aceptando el canon de arrendamiento del Dr. Palmer. En diciembre de 1948, en un momento en que ambas embarcaciones estaban guardadas en la caseta, un fuerte oleaje rompió las amarras del yate de Barreras, chocando contra la lancha del Dr. Palmer y hundiéndola.

El tribunal de distrito dictó sentencia a favor del Dr. Palmer y en contra de Barreras por el fundamento de que la causa próxima del accidente fué la negligencia de éste al no dotar su yate de amarras suficientemente fuertes para asegurarlo en condiciones normales. En apelación, el primer señalamiento es que el tribunal inferior cometió error al no resolver que el demandante estaba impedido de recobrar del demandado, por haber aquél asumido voluntariamente el riesgo de que pudiera ocurrir el accidente en cuestión.

La defensa de voluntariamente asumir el riesgo ha sido desarrollada de la idea expresada en la máxima latina *volenti non fit injuria,* que quiere decir que "Aquello a lo que una persona asiente no puede ser considerado en derecho como un daño." Una expresión general de esta doctrina es que "Si una persona, a sabiendas y comprendiendo el peligro existente, voluntariamente se expone al mismo, aun cuando no sea negligente, debe considerarse que dicha persona ha asumido el riesgo y está impedida de recobrar por daños resultantes del mismo. Está predicada en la teoría del conocimiento y apreciación del peligro y el sometimiento voluntario al mismo." *Gover* v. *Central Vermont Ry. Co.,* 118 A. 874, 877 (Vt., 1922). Al mismo efecto, *Echevarría* v. *Despiau,* 72 D.P.R. 472, 478; *Landrum* v. *Roddy,* 12 N. W. 2d 82, 88 (Neb., 1943); Keeton, *Personal Injuries Resulting From Open and Obvious Conditions,* 100 U. Pa. L. Rev. 629 (March, 1952); Bohlen and Harper, *Torts,* pág. 289; Prosser, *Torts,* pág. 376 *et seq.;* Eldredge, *Landlord's Tort Liability for Disrepair,* 84 U. Pa. L. Rev. 467, 469–71; *Restatement, Torts,* Vol. IV, sec. 893, Vol. II, sec. 343.

Convenimos con el apelante en que del propio testimonio del Dr. Palmer surge claramente que él tenía conocimiento y comprendía el riesgo que asumía. Declaró Palmer que cuando fué a ver a un funcionario de la Autoridad luego de otorgarse el arrendamiento a Barreras, "estaba previendo lo que iba a pasar"; que él "le informó de la condición de las amarras"; y que "le expliqué al Sr. Holohan que esa lancha

del Sr. Barreras se iba a soltar porque las amarras estaban podridas y me iba a hundir mi lancha". Palmer también declaró que "En varias ocasiones yo le llamé la atención al Sr. Barreras de que ese yate iba a soltar las amarras y me iba a destruir mi lancha . . .".

A pesar del testimonio del Dr. Palmer, no podemos convenir en que la defensa de asumir voluntariamente el riesgo sea aplicable a los hechos de este caso. Según Keeton, supra, lo expresa a la pág. 633, "aquél que voluntariamente entre en propiedad comercial *sin derecho a así hacerlo salvo aquél derivado del consentimiento del que la ocupa* y se topa con una condición en la propiedad, el peligro de la cual él conocía, no tiene derecho a recobrar por los daños accidentalmente provenientes de la conducta negligente del ocupante." (Bastardillas nuestras.) La dificultad aquí precisamente estriba en que la ocupación por el Dr. Palmer de parte de la caseta no estaba predicada exclusivamente en el consentimiento de Barreras para así hacerlo. Por el contrario, la corte inferior resolvió que el Dr. Palmer tenía la posesión de una tercera parte de la caseta en virtud de un contrato de arrendamiento que todavía estaba en vigor a la fecha del accidente. Bajo estas circunstancias, el Dr. Palmer era en efecto un co-arrendatario con Barreras. Por consiguiente no se le puede imputar haber asumido voluntariamente un riesgo cuando en verdad estaba haciendo valer sus derechos legales como co-arrendatario, independientemente de cualquier consentimiento de Barreras. Véanse *Pumarejo* v. *Martinó*, resuelto por opinión *per curiam* el 4 de mayo de 1950; artículo 1444, Código Civil, ed. 1930; Keeton, supra, págs. 638–39, y nota 31. En su consecuencia resolvemos que dicha defensa no procede en este caso. (1)

---

(1) En sus conclusiones de hecho, la corte inferior dijo que "desde el momento en que [Palmer] habló con Barreras, se convirtió *por lo menos* en un invitado de Barreras . . .". (Bastardillas nuestras.) Por los motivos expuestos en el texto de esta opinión, si el Dr. Palmer hubiera sido meramente un invitado, sería aplicable a él la doctrina de haber asumido voluntariamente el riesgo, y no podría recobrar. Pero en vista de la inequívoca

█■█ El segundo señalamiento es que el tribunal inferior cometió error al no resolver que la Autoridad era la *única* responsable del accidente, por haber arrendado la caseta a Barreras sin antes dar por terminado legalmente su arrendamiento con el Dr. Palmer. La cuestión de si la Autoridad era responsable conjuntamente con Barreras no está ahora ante nos, ya que Palmer no apeló de la sentencia a favor de la Autoridad. Sin embargo, no podemos resolver que la Autoridad fuera la *única* parte responsable. Es cierto que la Autoridad actuó impropiamente al arrendar la misma parte de la caseta en cuestión a dos personas. Pero una vez que Barreras se avino a considerar al Dr. Palmer como un co-arrendatario de la caseta, Barreras no podía luego echarle a la Autoridad toda la culpa por su propia negligencia al no amarrar su yate adecuadamente.

■ El tercer señalamiento es que la corte inferior erró al resolver que Barreras dió su consentimiento al Dr. Palmer para que continuara usando la caseta. Los autos contienen suficiente evidencia para basar esta conclusión. Por tanto no podemos alterarla.

El cuarto error es que la corte inferior resolvió que el Dr. Palmer se había convertido en un invitado de Barreras. Por los motivos expuestos en la nota 1, es innecesario discutir este error.

El quinto señalamiento es al efecto de que el tribunal de distrito cometió error al resolver que las amarras del yate de

conclusión de hecho de que el Dr. Palmer era un co-arrendatario, descartamos la superflua manifestación del tribunal inferior al efecto de que él era "por lo menos un invitado".

Creemos conveniente añadir que si el Dr. Palmer hubiera ocupado parte de la caseta únicamente debido a la tolerancia de Barreras, hubiera sido una persona con licencia más bien que un invitado. En cuanto al mayor grado de cuidado que debe tenerse con un invitado según éste se compara con una persona con licencia, véanse *Tavárez* v. *San Juan Lodge*, 68 D.P.R. 735, 743–44; *United States* v. *Hull,...* F. 2d...., (C. A. 1, Marzo 19, 1952); *Restatement, Torts*, Vol. II, secs. 330–32, 343, *Comment* a, págs. 939–40; Prosser, *Torts*, págs. 625–43; Eldredge, *Landlord's Tort Liability for Disrepair*, 84 U. Pa. L. Rev. 467, 470.

Barreras no eran suficientes para resistir el oleaje normal y que por consiguiente Barreras había sido negligente. El sexto error es el dejar la corte inferior de resolver que los daños a la lancha de Palmer fueron causados por un accidente inevitable proveniente de un acto de fuerza mayor. Estos dos errores están predicados en un ataque a la conclusión de hecho del tribunal de distrito al efecto de que las amarras no eran suficientes para asegurar el yate de Barreras en condiciones *normales*. Los autos contienen suficiente evidencia para sostener esta conclusión. Por consiguiente no intervendremos con la misma. *Cf. Camacho* v. *Cía. Popular de Transporte*, 69 D.P.R. 724.

El séptimo señalamiento es que la corte inferior cometió error al resolver que Palmer sufrió la pérdida total de su lancha y que ésta tenía un valor de $2,200 a la fecha del accidente.

El apelante argumenta este error así:

"La única referencia que hizo el Dr. Palmer López al hundimiento de su lancha es que la misma tenía un boquete hecho con uno de los tubos del yate de Barreras, y que estaba llena de agua y destrozada de tantos golpetazos que había recibido entre el yate y la pared. Eso lo dijo a preguntas de su abogado. (T. de E., pág. 17.) En repregunta manifestó que levantó su lanchà del agua, que la misma tenía un roto como de seis pulgadas de diámetro, que la levantó a ver si se mantenía a flote, la dejó al nivel del agua y se volvió a hundir. Que la dejó allí y cuando volvió otra vez por la tarde estaba hundida, y que a las dos semanas cuando volvió la habían sacado afuera. La única declaración sobre el estado de la lancha aparece a la página 28, T. de E., y claramente no tiene valor ni peso alguno por ser enteramente de referencia. En otras palabras, en la página 28 Palmer, quien tiene la obligación de probar su caso por la preponderancia de la evidencia, la única evidencia que pretende introducir para probar su alegación de pérdida total es una evidencia de carácter indeleznable, como lo es su manifestación de que un día llevó un cuñado de él que es mecánico y el cuñado le dijo que la lancha no tenía reparación y que era inservible. Ese cuñado, cuyo nombre ni siquiera se sabe, no vino a declarar ni Palmer presentó testimonio alguno pericial sobre la pérdida total de su lancha.

"Contra la declaración de Palmer, que es la única que existe y que ya hemos visto de las fallas que adolece, está la declaración del perito Manuel Salas, quien declaró que allá para diciembre de 1948 tuvo la oportunidad de examinar la lancha de Palmer, la que conoce desde 1936, la cual a la parte de estribor tenía un golpe, más o menos a la mitad de la lancha, y en el costado tenía un hoyo más o menos como de diez pulgadas; que el motor estaba perdido por no haberse desarmado en piezas, lavado bien y engrasado tan pronto como se sumergió; y que por $310, $150 para arreglo del motor y $150 para montar el motor dentro de la lancha, más $10 de un carpintero, dejaba corriendo la lancha en buenas condiciones. (T. E., pág. 95.) Más aún, sobre el valor de la lancha antes del accidente, declaró que lo más que valía eran $600. (T. E., pág. 96.)

"La prueba en este caso indica claramente que cometió grave error de derecho el tribunal inferior al condenar a Barreras a pagar a Palmer $2,200, toda vez que la lancha de éste era fácilmente arreglable por la suma de $310 y que Palmer no puede recobrar aquellos daños que, aun en el supuesto que a ellos tuviere derecho, no hubiera minimizado con toda diligencia. A la negligencia y apatía de Palmer es que se debe cualquier daño superior a $310 que hubiera sufrido la lancha de su propiedad. Es él en todo caso quien tiene que culparse por sus propias actuaciones. Esa apatía está demostrada por sus palabras al encontrarse con Barreras cuando le dijo que 'le habían sacado de náutico.' Más adelante, y a la página 105 de la T. de E., se ve claramente que Palmer nada hizo por minimizar sus daños, y aunque negó que se pusiera a esperar que le pagaran su lancha, no es otra cosa lo que hizo.

"Véase al efecto cómo declara Palmer sobre el particular a la página 105 de la T. de E., donde dice:

" 'P. ¿Qué hizo usted para salvar esa inversión suya el día que se hundió la lancha?

" 'R. La lancha yo la levanté a ver en qué condiciones estaba y le ví el boquete que tenía y la deje allí a ras del agua sujeta por dos cordeles, y parece que la misma presión del agua la volvió a hundir allí mismo.

" 'P. ¿Entonces se olvidó de la lancha?

" 'R. *Sí, me olvidé de la lancha.*

" 'P. ¿A esperar que le paguen por ella?

" 'R. No.' "

En su alegato el apelado no contesta este argumento en detalle. Simplemente dice en términos generales que el tribunal inferior dirimió el conflicto en la evidencia. Convenimos con el apelante en que la corte inferior cometió manifiesto error al dar crédito a manifestaciones de referencia, vagas, indefinidas y no corroboradas de un cuñado no identificado del demandante, frente al testimonio detallado de un perito que declaró personalmente y estuvo sujeto a contrainterrogatorio. Bajo estas circunstancias, resolvemos que debe hacerse responsable al demandante al no hacer esfuerzos para reducir los daños.

*La sentencia será modificada en el sentido de reducir los daños a la suma de $310 y los honorarios de abogado a $100. Así modificada, la sentencia será confirmada.*