AMBROSINA VÉLEZ, demandante y apelada, *v.* GOBIERNO DE LA CAPITAL, demandado y apelante.

Número 10710.
*Sometido:* 1 de noviembre de 1954. *Resuelto:* 28 de diciembre de 1954.

702

*Samuel R. Quiñones,* abogado del apelante; *Marcelino Romany,* abogado de la apelada.

Per Curiam: Allá para el primero de agosto de 1949, Ambrosina Vélez presentó demanda de daños y perjuicios contra el Gobierno de la Capital.(¹)  Alegó en síntesis en ella que mientras transitaba el 6 de julio del mismo año por la acera (del lado este) de la Avenida José de Diego de esta ciudad y como consecuencia de la negligencia de la corporación demandada, tuvo allí una caída que le ocasionó la fractura

---

(¹) Posteriormente se hizo figurar como demandado a El Pueblo de Puerto Rico. Éste fué luego eliminado, dictándose más tarde sentencia desestimando la demanda en cuanto al mismo.  Sin embargo, de los autos aparece que esa sentencia fué posteriormente dejada sin efecto y restituído "el status quo existente antes de ser ella dictada, quedando por tanto en libertad cualquiera de las partes para solicitar el señalamiento para vista de la moción del Pueblo de Puerto Rico solicitando se dicte sentencia a su favor."

de la pierna izquierda, habiendo sufrido con motivo de este accidente daños y perjuicios que en total montan a $10,000.

El Gobierno de la Capital contestó alegando que la demanda no aducía hechos y negando sus hechos esenciales. Fué el pleito a juicio y el tribunal a quo dictó sentencia declarando con lugar la demanda y condenando al gobierno demandado a pagar a la demandante la suma de $1,150—$600 por dolores físicos y angustia mental; $300 por incapacidad de un 10% en las funciones ambulatorias de la demandante; y . $250 para honorarios médicos—más las costas y $200 para honorarios de abogado. Dicha sentencia está basada en una opinión en que figuran las siguientes conclusiones de hechos:

"1—La demandante Ambrosina Vélez es una mujer de unos 50 años de edad, goza de buena salud y es de constitución fuerte. Desde hace año y medio dicha demandante reside en la casa número 355, sita en el lado este de la Avenida José de Diego de esta ciudad de San Juan, P. R.

"2—El día 6 de julio de 1949 la demandante se encontraba de visita en la casa del Doctor Suárez. Como entre 9:30 y 10:00 de la noche de ese mismo día regresó a su hogar en el automóvil del Sr. Eugenio Benítez Gautier, quien a la sazón había ido también de visita a la casa del Doctor Suárez. Al llegar a la Avenida de Diego, Benítez no pudo detener su automóvil frente a la entrada de la residencia de la demandante por impedírselo una guagua que allí estaba detenida y un sinnúmero de personas que también se encontraban paradas en aquel sitio, por lo que se detuvo más atrás, estacionando su vehículo como a un pie del encintado o muro que divide la acera derecha yendo hacia la calle Loíza, de la Avenida José de Diego. La demandante abandonó el automóvil en ese sitio y trató de cruzar una reata o jardinera que hay allí para llegar a su hogar pero pisó la raíz de un árbol que había en dicha jardinera, cayendo al suelo, con su cuerpo sobre su pierna izquierda. Benítez y su esposa auxiliaron a la demandante conduciéndole al hogar de ésta.

"3—A consecuencia de este accidente la demandante sufrió una fractura simple del maléolo exterior de la pierna izquierda, lo que la obligó a permanecer en cama por espacio de dos meses, aunque después de los primeros días caminaba con la ayuda de muletas y un bastón.

"4—El doctor José Noya Benítez asistió a la demandante desde el día 11 de julio hasta el 29 de septiembre de 1949. Este doctor aplicó a la demandante una bota de yeso que cubría desde la parte inferior de la rodilla hasta los dedos de su pie izquierdo, a fin de inmovilizar el tobillo. Le fué removido el yeso el día 28 de julio y luego se le aplicó un vendaje elástico que se le quitaba una o dos veces en semana para aplicársele calor y darle masajes.

"5—Tanto al ocurrir el accidente como durante todo el tiempo que duró el tratamiento médico, la demandante sufrió intensos dolores físicos.

"6—La demandante se dedicaba a trabajar en los quehaceres de su hogar y participaba activamente en la vida social y en obras de caridad.

"7—La demandante ha quedado con una incapacidad de un 10% en sus funciones ambulatorias, aunque tal incapacidad puede disminuir con el transcurso del tiempo. Actualmente cuando comienza a caminar cojea un poco pero después de caminar algún rato lo hace normalmente.

"8—Los servicios profesionales prestados por el Dr. Noya a la demandante tienen un valor de $250.

"9—En la acera que queda al lado este de la Avenida de Diego y desde la intersección de esta calle con la Avenida Ponce de León y hasta más abajo de la casa de la demandante, yendo en dirección opuesta a la Avenida Ponce de León, hay reatas o jardineras que consisten en un espacio libre de pavimento que se deja entre el encintado de la calle y la acera para sembrar plantas de ornamentación.

"10—En la jardinera donde sufrió la caída la demandante, la tierra está a no menos de dos pulgadas bajo el nivel del pavimento de la acera y de esta tierra sobresalían las raíces de un árbol que hay allí plantado. Como consecuencia de haber pasado la demandante sobre una de esas raíces, sufrió la caída mencionada en la demanda.

"11—La noche del accidente fué la primera vez que la demandante trató de pasar por la jardinera y aunque conocía su existencia en aquel sitio no había visto anteriormente las raíces que sobresalían de su suelo.

"12—La susodicha jardinera tiene una forma rectangular pero es mucho más larga que ancha y está entre el muro de concreto que separa la acera dela calle y la línea de edificaciones. Está pues dentro de la propia acera. No tiene verja u otra clase

de barreras a su alrededor, ni está sembrada de plantas de ornamentación a excepción de un árbol de grueso tronco.

"Generalmente los peatones cruzan a través de estas jardineras en ahorro de tiempo y distancia, bien para bajar a la calle o para subir a la acera."

Esa opinión también contiene conclusiones de derecho, en las cuales entre otras cosas se dice que un estudio detenido de la Resolución Conjunta núm. 16 de 27 de abril de 1933 (Leyes de 1932–33, pág. 655) "nos ha convencido de que no fué la intención de la Legislatura transferir al Gobierno de Puerto Rico, el control y dominio de las aceras a ambos lados de la Avenida de Diego"; que "concluímos . . . que el accidente descrito en la demanda ocurrió en una acera que estaba bajo el dominio y control de la demandada"; y que "estando dicha acera bajo el dominio y control del municipio demandado, era deber de éste mantenerla en condiciones de razonable seguridad." También manifestó el tribunal sentenciador que "las condiciones especiales en que se mantenía la referida jardinera, esto es, sin estar cubierta de tierra hasta por lo menos el nivel del pavimento y la existencia de gruesas raíces de árboles en su fondo y sobre el nivel del suelo, constituían a nuestro juicio, una condición de peligro y por tanto de negligencia por parte de la demandada;" y que "es cierto que estas jardineras no se construyen para el paso de peatones, mas sin embargo la demandada en este caso estaba en la obligación de anticipar tal uso por parte del público especialmente cuando nada hay en la prueba que revele que el demandado ha tomado medida de clase alguna para impedirlo."

El Gobierno de la Capital apeló. Sostiene ahora que el tribunal sentenciador erró

(1) ". . . al establecer la conclusión de derecho, y dictar su sentencia fundamentándola en tal conclusión, de que no fué la intención de la Legislatura, al aprobar la Resolución Conjunta número 16 de 22 de abril de 1933, transferir al Gobierno de Puerto Rico el control y dominio de las aceras a ambos lados de

la Avenida de Diego, así como al basar tal conclusión en el caso de *City of Mobile* v. *Harker,* 85 So. 425.

(2) ". . . al establecer la conclusión de derecho y dictar su sentencia fundamentándola en tal conclusión, de que era deber de la parte demandada mantener la acera en que ocurrió el accidente en condiciones de razonable seguridad.

(3) ". . . al establecer la conclusión de derecho, y al dictar su sentencia fundamentándola en tal conclusión, de que la parte demandada viene obligada a mantener las jardineras de la Avenida de Diego en el mismo estado de razonable seguridad que el de las aceras.

(4) ". . . al establecer su conclusión de derecho, y dictar sentencia fundamentándola en tal conclusión, de que el accidente alegado en la demanda se debió a la culpa y negligencia del demandado Gobierno de la Capital.

(5) ". . . al apreciar la prueba en este caso y al dictar su sentencia contra la parte demandada sobre la base de tal errónea apreciación de la prueba.

(6) ". . . al dictar su sentencia contra la parte demandada."

■ La Resolución Conjunta núm. 16 de 27 de abril de 1933 "para establecer vías de enlace entre las distintas carreteras insulares que comunican esta ciudad de San Juan con la isla", etc., en su sección primera

". . . ordena al Comisionado del Interior de Puerto Rico que se haga cargo de la reparación y conservación de los trozos de carreteras siguientes:

"(*a*).      .      .      .      .      .      .      .

"(*b*) Otro trozo de 1,100 metros más o menos de longitud que parta desde la intersección de la Calle Europa con la Carretera Miramar–Martín Peña y que siguiendo esta calle en toda su longitud y la Avenida de Diego, una la referida Carretera con la Avenida Fernández Juncos, Avenida Ponce de León y la Calle de Loíza en su intersección con la Avenida de Diego.

"(*c*) .      .      .      .      .      .      .      .      .

"(*d*) .      .      .      .      .      .      .      ."

En su sec. 2 dispone que:

*"Los trozos de calles citados en la anterior sección* serán considerados a partir de la vigencia de esta Ley como parte de las

carreteras insulares sometidos a las disposiciones vigentes en la Ley para Conservación y Policía de las Carreteras y Caminos Públicos de esta Isla. *El Gobierno de la Capital tendrá jurisdicción sobre las dos zonas urbanizadas a ambos lados de la travesía de estas calles y fijará las alineaciones para construcción de edificios y aceras, de acuerdo con lo que disponen las Ordenanzas Municipales."* (Bastardillas nuestras.)

Y en su sec. 3 que:

"El Comisionado del Interior conservará *dichos trozos de calle o travesía* en la misma forma que el resto de las carreteras insulares." (Bastardillas nuestras.)

La contención del Gobierno de la Capital es que por disposición expresa de la citada resolución conjunta, el sitio donde ocurrió el accidente está bajo el control y dominio de El Pueblo de Puerto Rico y no del Gobierno de la Capital. Discrepamos. La fraseología de la Resolución es clara al efecto de que al Pueblo de Puerto Rico sólo se le transfiere aquello que en la Resolución se califica como de trozos de calles o travesías, quedando por disposición expresa de la misma bajo la jurisdicción y dominio del Gobierno de la Capital las zonas urbanizadas a ambos lados de las calles o travesías así traspasadas a El Pueblo. La Avenida de Diego en Santurce fué uno de los trozos o travesías traspasados por esa Resolución a este último. El accidente en cuestión no ocurrió en el espacio utilizado por los vehículos para transitar, sino en una faja de terreno existente a lo largo de la Avenida, entre el encintado de la avenida y la parte propiamente utilizada como acera.

En nuestra opinión, la Resolución Conjunta es clara en su redacción. Interpretamos ésta en el sentido de que al Pueblo de Puerto Rico sólo se le traspasó aquella parte de las calles o travesías utilizadas por vehículos de cualquier clase para transitar, dejándose la jurisdicción y el dominio de las zonas urbanizadas a ambos lados de esas calles o travesías —incluyendo las aceras y reatas o jardineras—al Gobierno de la Capital, aquí demandado. Siendo clara la letra de la Re-

solución, es innecesario que nos entreguemos a una extensa discusión—como lo hacen las partes—de qué se entiende por calles o travesías, ni si en la definición de éstas de ordinario están comprendidas las aceras.

El tribunal sentenciador no basó su criterio en el caso de *City of Mobile* v. *Harker*, 85 So. 425. Meramente dijo "véase" ese caso, a fin de demostrar que otro tribunal ante una situación parecida había llegado a una conclusión similar.

En vista del anterior razonamiento, somos de opinión que el primer error no fué cometido.

██ Los errores segundo, tercero y cuarto pueden ser discutidos conjuntamente. Teniendo el Gobierno de la Capital aquí demandado el control y dominio de las aceras a ambos lados de la Avenida de Diego, éste tenía el deber de mantenerlas en razonable buen estado de conservación, incluyendo asimismo las reatas o jardineras que se extienden a todo lo largo de la avenida. Véase *Davidson* v. *H. I. Hettinger & Co.*, 62 D.P.R. 301, 308.

El municipio sabía, o debía saber, que por la citada jardinera continuamente transitaba público, bien sea para cruzar la avenida de un lado a otro, para tomar o descender de las guaguas o al tomar cualquier otro vehículo de motor o al descender de éstos. *Cf. Tavárez* v. *San Juan Lodge*, 68 D.P.R. 735. La demandante no incurrió por tanto en negligencia contributoria al cruzar por la reata, es decir, al hacer lo que todos hacían. Bajo tales circunstancias el deber del municipio de mantener las citadas reatas en buen estado de conservación era ineludible. Como de acuerdo con la prueba la jardinera donde ocurrió el accidente estaba a varias pulgadas más baja que el encintado y la acera, y las raíces de un árbol sobresalían varias pulgadas, el permitir tal cosa constituía negligencia de parte del gobierno demandado.

██ La lectura que hemos hecho de la transcripción de evidencia nos convence de que el tribunal sentenciador no erró en la apreciación de la prueba, ya que sus conclusiones de

hechos encuentran apoyo en la evidencia que figura en autos. Por tanto, tales conclusiones no deben ser alteradas en apelación. *Palmer* v. *Barreras*, 73 D.P.R. 278; *Davidson* v. *H. I. Hettinger & Co.*, supra; *Rodríguez* v. *Arocho*, 62 D.P.R. 700; Regla 52 de las de Enjuiciamiento Civil.

*No habiéndose cometido ninguno de los errores señalados, la sentencia apelada será confirmada.*

El Juez Asociado Sr. Pérez Pimentel no intervino.