ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **ISABEL CRUZ OLIVARES, RAÚL GONZÁLEZ DÍAZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS** DEMANDANTES(S) - RECURRIDA(S) <br><br> V. <br><br> **MUNICIPIO AUTÓNOMO DE SAN JUAN Y OTROS** DEMANDADA(S)-PETICIONARIA(S) | **KLCE202201357** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN** <br><br> Civil Núm.: **SJ2022CV01341 (804)** <br><br> Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez

*Barresi Ramos*, juez ponente.

## S E N T E N C I A

En San Juan, Puerto Rico, hoy día 26 de febrero de 2024.

Comparecen ante este Tribunal de Apelaciones, el **MUNICIPIO AUTÓNOMO DE SAN JUAN** y **ÓPTIMA SEGUROS (MUNICIPIO Y ÓPTIMA)** mediante *Solicitud de Certiorari* incoada el 12 de diciembre de 2022. En su escrito, nos interpelan para que revisemos la *Resolución* decretada el 12 de octubre de 2022 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Mediante este dictamen, el foro primario determinó que no procede la *Moción en Solicitud de Desestimación por Falta de Parte Indispensable.*[2]

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Esta determinación judicial fue notificada y archivada en autos el 12 de octubre de 2022. Véase, Apéndice de *Solicitud de Certiorari,* págs. 43- 44.
[2] *Íd.,* págs. 34- 38.

## - I –

El 25 de febrero de 2022, los señores **Isabel Cruz Olivares**, **Raúl González Díaz** y la **Sociedad Legal de Gananciales compuesta por Ambos** (matrimonio **Cruz-González**) entablaron *Demanda* sobre daños y perjuicios contra el **Municipio Autónomo de San Juan**, su aseguradora **Óptima Seguros**, el Estado Libre Asociado de Puerto Rico (ELA) y al Departamento de Transportación y Obras Públicas (DTOP). Ello por una presunta caída por un desnivel de la acera en la Avenida Ponce de León en San Juan, Puerto Rico, a la altura de la Parada 22, ocurrido el día 10 de marzo de 2021.[3] El matrimonio **Cruz-González** alegó que el **Municipio** era el titular, dueño y responsable del lugar donde ocurrió el accidente, así como el ELA y el DTOP eran titulares de las vías de rodaje y aceras en Puerto Rico.

Más tarde, el 6 de abril de 2022, el Departamento de Justicia (Departamento), en representación del ELA y el DTOP, presentó un *Aviso de Injunction Paralizando la Litigación del Presente Caso y sobre el Requisito de Presentar una Solicitud de Gastos Administrativos ante el Tribunal de Título III*.[4] En el aviso, el Departamento peticionó que el tribunal *a quo* tomara conocimiento de la aplicabilidad del *injunction* permanente emitido el 18 de enero de 2022, por el Tribunal de Distrito Federal de los Estados Unidos, en el caso *In Re Commonwealth of Puerto Rico*, Case No. 17BK3283-LTS, en el cual conforme con el *Order and Judgment Confirming Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* ("Confirmation Order"), sobre las reclamaciones surgidas *post-petition* y presentadas previo a la confirmación del Plan de Ajuste. Además, hizo referencia a un documento presentado por la Junta de Control Fiscal (Junta) ante el Tribunal de Distrito Federal de los Estados Unidos intitulado *Notice*

---

[3] Véase, Apéndice de *Solicitud de Certiorari*, págs. 1- 2.
[4] *Íd.*, págs. 3- 10.

*of (A) Entry of Order Confirming Modified Eight Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et. al. Pursuant to Title III of PROMESA and (B) Ocurrence of the Effective Date* ("Notice") en el cual la Junta notificó la fecha límite para presentar una solicitud de pago por Reclamaciones de Gastos Administrativos. Finalmente, por no tener jurisdicción, el Departamento suplicó que se dejara sin efecto cualquier orden para la continuación del litigio en virtud del referido *injunction*.

El 20 de abril de 2022, el matrimonio **CRUZ-GONZÁLEZ** presentó *Moción en Cumplimiento de Orden* en la cual alegó que el 28 de mayo de 2019, la Honorable Jueza Laura Taylor Swain, Jueza del Tribunal de Distrito Federal de los Estados Unidos, determinó en el caso *In Re Commonwealth of Puerto Rico*, 17-03283, que todas las partes que pretendan presentar un escrito para el relevo o modificación de la paralización automática para continuar el curso ordinario de una acción civil deberán cumplir con el párrafo III Q y dar aviso de dicha solicitud a (AAFAF) en quince (15) días de su presentación.[5] Además, arguyó que la orden es previa al plan de ajuste de 15 de marzo de 2022 y no ha sido revocada ni dejada en efecto.

Así las cosas, el 2 de mayo de 2022, se dictaminó *Sentencia Parcial* en la cual se paralizaron los procedimientos en cuanto al ELA.[6] Esta decisión concluyó lo siguiente:

> "En vista de que el Plan de Ajuste descargó y liberó al ELA de los reclamos, causas de acción y cualquier otra deuda que haya surgido en o antes del 15 de marzo de 2022, incluyendo aquellas que surgieron antes de la fecha en que comenzó el proceso de quiebra del ELA, procede la paralización en cuanto a dicha parte. Considerando que el ELA es un codemandado, no vemos razón que justifique la paralización total del pleito, por lo que la disposición legal solo opera en cuanto al deudor, que en este caso es el ELA."

El 17 de mayo de 2022, el matrimonio **CRUZ-GONZÁLEZ** presentó *Moción en Solicitud de Reconsideración de Sentencia Parcial del 2 de mayo de 2022 [Entrada Núm. 11]* en la cual reclamó que el caso fuese paralizado en su

---

[5] Véase, Apéndice de *Solicitud de Certiorari*, pags. 12- 13.
[6] *Íd.*, págs. 15- 17.

totalidad, toda vez que el ELA era una parte indispensable en el pleito de la cual no se podría prescindir.[7] Puntualizó que los hechos que se alegaron en la *Demanda* ocurrieron en una acera de la Avenida Ponce de León en San Juan, conocida como la PR-25, la cual era una carretera bajo el control y la jurisdicción del DTOP del ELA. Además, fundamentó su reconsideración en el Artículo 1.053(g) del Código Municipal, 21 LPRA sec. 7084, el cual establece que "no estarán autorizadas las acciones contra un municipio por daños y perjuicios a la persona o a la propiedad por acto u omisión de un funcionario, agente o empleado de cualquier municipio: cuando ocurran accidentes en las carreteras o aceras estatales." El 2 de mayo de 2022, se prescribió *Resolución* declarando no ha lugar la antedicha solicitud de reconsideración.[8]

El 10 de junio de 2022, el **MUNICIPIO Y ÓPTIMA** presentaron *Contestación a Demanda* en la cual solicitaron la desestimación del caso por estar el foro primario impedido de adjudicar la controversia sobre la jurisdicción y control del lugar de los hechos por falta de parte indispensable.[9] Arguyeron que aun existía controversia sobre la titularidad, control y mantenimiento del lugar donde ocurrieron los hechos, el ELA y el DTOP son partes indispensables en el pleito, por lo que la determinación que se emitiera sería nula.

Después, el 6 de octubre de 2022, el **MUNICIPIO Y ÓPTIMA** presentaron *Moción en Solicitud de Desestimación por Falta de Parte Indispensable*.[10] Reiteraron su posición respecto al ELA como parte indispensable, y solicitaron la desestimación de la causa de acción por ser el ELA y el DTOP partes indispensables sin cuya presencia no podía adjudicarse el caso.

El 11 de octubre de 2022, el matrimonio **CRUZ-GONZÁLEZ** presentó *Moción en Cumplimiento de Orden* en la cual se opuso a la solicitud de

---

[7] Véase, Apéndice de *Solicitud de Certiorari*, págs. 18- 22.
[8] *Íd.*, pág. 23.
[9] *Íd.*, págs. 24- 33.
[10] *Íd.*, págs. 34- 38.

desestimación por falta de parte indispensable. [11] Razonó que el Municipio era el propietario con jurisdicción, control y a cargo de la inspección, limpieza y mantenimiento de la acera donde ocurrieron los hechos alegados en la *Demanda*, en virtud de la Ley Núm.49 de 1ro de diciembre de 1917, 9 LPRA secs. 12-18, mejor conocida como *Ley de Travesías* (Ley Núm. 49).

En consecuencia, el 12 de octubre de 2022, se dictaminó la *Resolución* recurrida. En la antedicha decisión, respecto a la responsabilidad del ELA, se expuso:

> "La parte demandada, Municipio de San Juan, solicita la desestimación del caso por falta de parte indispensable y basado en el Artículo 1.053 (g) del Código Municipal de Puerto Rico, 21 LPRA 7084 (g). No le asiste la razón.
>
> El art. 1.053(g), supra, dispone que no se [podrán] presentar acciones de daños y perjuicios: "[c]uando ocurran accidentes en las **carreteras o aceras estatales**". Sin embargo, de las alegaciones de este caso surge que el lugar en donde ocurrió el accidente es en la **acera** de la Avenida Ponce [de] León en San Juan. Conforme [a] la Ley de Travesías, 9 LPRA sec. 13, las travesías estaduales se conservarán por el Departamento de Transportación y Obras Públicas, no obstante, se dispone que **los municipios tendrán jurisdicción sobre las dos zonas urbanizadas, a ambos lados de las travesía[s]...". Por tanto, es el municipio quien tiene la jurisdicción sobre la acera y no el Estado, aunque se trate de una vía estatal**. Pérez v. Municipio de Lares, 155 DPR 697, 711 (2001). En virtud de lo expuesto, se determina que el artículo 1.053 del Código Municipal de Puerto Rico, no es de aplicación a este caso.
>
> Cónsono con lo resuelto no procede la desestimación por falta de parte indispensable, toda vez que el lugar en que ocurrió el accidente es en la acera, la cual es jurisdicción del municipio y no del Estado. Se ordena la continuación de los procedimientos."

Inconformes con dicho dictamen, el 12 de diciembre de 2022, el **MUNICIPIO Y ÓPTIMA** presentaron ante este Tribunal de Apelaciones un escrito intitulado *Solicitud de Certiorari*. En dicho recurso, reiteraron su posición en cuanto a que el ELA es parte indispensable en el pleito. Así como, no podía dictarse un decreto final entre las demás partes sin lesionar y afectar sus derechos, por lo que debía desestimarse el pleito al ELA ser una parte indispensable en el caso. Además, procuraron dejar sin efecto las

---

[11] Véase, Apéndice de *Solicitud de Certiorari*, págs. 40-42.

determinaciones de hechos relacionadas con la jurisdicción del lugar de los hechos. Junto a su alegación, señalan los siguientes errores:

> Erró el TPI al determinar que *"no procede la desestimación [de la Demanda] por falta de parte indispensable"*.

> Erró el TPI al determinar que *"es el municipio quien tiene la jurisdicción sobre la acera y no el Estado, aunque se trate de una vía estatal"* y que el *"lugar en que ocurrió el accidente es en la acera, la cual es jurisdicción del municipio y no del Estado"*, toda vez que dicha(s) determinación(es) es(son) prematura(s), improcedente(s) e innecesaria(s) en esta etapa de los procedimientos por no estar el asunto sometido ante la consideración del TPI, tuvo(ieron) el efecto de prejuzgar una de las controversias principales del caso, es(son) contraria(s) a las alegaciones de ambas partes, no está(n) justificada(s) a base de la evidencia que obra en el expediente judicial y, además, es(son) contraria(s) a derecho.

El 14 de diciembre de 2022, intimamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de diez (10) días para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado al matrimonio **Cruz-González**. El día 29 de diciembre de 2022, el matrimonio **Cruz-González** presentó su *Memorando en Oposición a Expedición de Auto de Certiorari*. En su alegato, razonó que el **Municipio**, por más de treinta (30) años ha contratado una póliza de responsabilidad pública cubriendo las aceras de la ciudad, la cual incluye las aceras de la Ave. Ponce de León. Enfatizó, además, que no falta una parte indispensable, toda vez que se ha establecido que la titularidad del lugar del accidente recae única y exclusivamente sobre el **Municipio**. Puntualizó que al **Municipio** ser el titular del lugar de los hechos, es innecesaria la comparecencia del ELA al pleito. Finalmente, el 23 de enero de 2023, el Gobierno de Puerto Rico, por conducto de la Oficina del Procurador General de Puerto Rico, presentó una *"Comparecencia Especial"*.[12]

---

[12] Mediante dicha comparecencia el Procurador General informó que en virtud del *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction* emitido al amparo del *Puerto Rico Oversight Management and Economic Stability Act* ("PROMESA") resolvió que la solicitud de gastos administrativos no será necesaria para ciertas reclamaciones *post-petición*, entre ellas, los casos de daños bajo la *Ley de Reclamaciones y Demandas contra el Estado*, 32 LPRA sec. 3077 *et seq.*, siempre que la reclamación no exceda los límites estatutarios de $75,000.00 o $150,000.00. Por tanto, se permitió la litigación de los casos que se encuentren dentro de los límites estatutarios hasta

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II –

- A –

El recurso de *certiorari* es un mecanismo de carácter extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión de un tribunal inferior.[13] La Regla 52 de las de Procedimiento Civil de 2009 contiene las disposiciones pertinentes a las revisiones de un tribunal de superior jerarquía sobre las sentencias, resoluciones u órdenes interlocutorias del Tribunal de Primera Instancia.[14] Como norma general, la Regla 52.1 de las de Procedimiento Civil de 2009 permite al Tribunal de Apelaciones expedir un recurso de *certiorari* para revisar aquellas resoluciones u órdenes bajo las Reglas 56 y 57 de las de Procedimiento Civil de 2009 o de la denegatoria de una moción de carácter dispositivo.[15]

A manera de excepción, la referida Regla permite que el Tribunal de Apelaciones revise aquellas órdenes o resoluciones interlocutorias dictadas por el foro primario en las siguientes instancias:

1. cuando se recurre de decisiones en cuanto a la admisibilidad de testigos de hechos o peritos esenciales;
2. asuntos relativos a privilegios evidenciarios;
3. anotaciones de rebeldía;
4. casos de relaciones de familia;
5. en aquellos casos que revistan de interés público; y
6. en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

---

las etapas apelativas y de ejecución de sentencia. El caso de marras está dentro de los límites de las cuantías establecidas.

[13] *Rivera Gómez et al. v. Arcos Dorados et. al.* 2023 TSPR 65; 212 DPR ___ 2023; *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I,* 206 DPR 391, 403 (2021); *800 Ponce de León v. AIG,* 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 (2012).

[14] 32 LPRA Ap. V., R. 52.

[15] 32 LPRA Ap. V., R. 56 y R. 57.

Al decidir si se expide un auto de *certiorari*, el Tribunal de Apelaciones debe regirse por los criterios expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, a saber: [16]

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos que se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción.[17]

**- B –**

Una parte contra quien se haya presentado una reclamación judicial puede solicitar la desestimación del pleito, aun antes de contestar la demanda, cuando está presente alguna de las circunstancias previstas en la Regla 10.2 de las de Procedimiento Civil de 2009.[18] Dicha Regla 10.2 dispone lo siguiente:

"Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) **dejar de acumular una parte indispensable**."

La noción de parte indispensable se refiere a la necesidad de hacer partes en un pleito a aquellas personas que tengan un interés común sin cuya

---

[16] 4 LPRA Ap. XXII-B, R. 40.
[17] *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).
[18] 32 LPRA Ap. V. R. 10.2; *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 935 (2011).

presencia no pueda adjudicarse la controversia.[19] El Tribunal Supremo ha definido a la parte indispensable como:

> "[A]quella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las otras partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia."[20]

El interés común al que se refiere la Regla 16.1 de las de Procedimiento Civil de 2009 no es cualquier interés de una persona en determinado pleito, "sino que se trata de un interés de tal orden que impida la confección de un [remedio] adecuado sin afectarles o destruirle radicalmente sus derechos".[21] Además, "[ese] interés tiene que ser real e inmediato. No se trata de meras especulaciones o de un interés futuro."[22]

Este mecanismo procesal responde a la norma constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin un debido proceso de ley.[23] Así pues, la referida Regla persigue el propósito de proteger a la persona ausente de los posibles efectos perjudiciales de un dictamen judicial, a la vez que evita la multiplicidad de pleitos mediante un remedio efectivo y completo.[24]

La determinación de si una parte es o no indispensable requiere de un enfoque pragmático, lo que supone "una evaluación individual de acuerdo con las circunstancias particulares presentes en cada caso [...]".[25] "Esto último exige una evaluación jurídica de factores tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad".[26] En definitiva, "los tribunales tienen que hacer un juicioso análisis que considere la determinación de los derechos de un ausente y las

---

[19] Regla 16.1 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V.
[20] *Cirino González v. Adm. Corrección et al.*, 190 DPR 14,46 (2014).
[21] *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007).
[22] *Íd.*
[23] Constitución de PR, Art. II, Sec. 7, LPRA, Tomo 1.
[24] *García Colón et al. v. Sucn. González*, 178 DPR 527, 550 (2019).
[25] *Íd.*
[26] *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 434 (2003).

consecuencias de no ser unido como parte en el procedimiento."[27]

Es tal la necesidad de proteger los intereses de las *partes indispensables*, que:

> [L]a no inclusión en el pleito de una *parte indispensable* constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso. Incluso los tribunales apelativos deben levantar *motu proprio* la falta de *parte indispensable*, debido a que ésta incide sobre la *jurisdicción* del tribunal. De reconocerse que está ausente una *parte indispensable*, debe desestimarse la acción. Sin embargo, dicha desestimación no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada.[28]

- **C** –

Es preciso aludir, que cuando la Asamblea Legislativa aprobó en 1983 la *Ley de Administración, Conservación y Policía de las Carreteras Estatales de Puerto Rico*, decidió dejar vigentes las disposiciones de la Ley Núm. 49, *supra*, aplicables específicamente a las travesías de Puerto Rico.[29]

Conforme al aludido estatuto (Ley Núm. 49, *supra*): "... las travesías estaduales se conservarán por el Departamento de Transportación y Obras Públicas, no obstante, **se dispone que los municipios tendrán jurisdicción sobre la acera y no el Estado, aunque se trate de una vía estatal.**"[30] Más aún, el Artículo 2 de la concerniente Ley decreta que "**los municipios tendrán jurisdicción sobre las dos zonas urbanizadas, a ambos lados de la travesía, y podrán fijar las alineaciones para construcción de edificios y aceras de acuerdo con lo que dispongan las ordenanzas municipales.**"[31]

Ante ello, la jurisdicción de las zonas urbanizadas y lo concerniente a la construcción de las aceras paralelas a éstas permanecerán bajo el control de los municipios.[32] Lo anterior varía, cuando el municipio por donde discurre la travesía decide conservar, a su propio cargo, el tramo de

---

[27] *Romero v. S.L.G. Reyes,* 164 DPR 721, 732 (2005).
[28] *Pérez Rosa v. Morales Rosado, supra,* pág. 223-224.
[29] Ley Núm. 54 de 30 de mayo de 1973, según enmendada.  9 LPRA § 2101.
[30] (Énfasis nuestro).
[31] *Pérez v. Mun. de Lares*, 155 DPR 697, 708 (2001). (énfasis nuestro).
[32] *Íd.,* pág. 709.

carretera.[33] Esta declaración debe ser remitida al secretario del Departamento de Transportación y Obras Públicas por conducto del secretario de Estado.

Por otro lado, la Ordenanza Municipal #7, Serie 2002-2003, mejor conocida como *Código de Urbanismo del Municipio de San Juan*, en su Artículo 8.04 dispone las funciones del Departamento de Operaciones y Ornato del Municipio de San Juan con algunas funciones específicas tales como: "[v]elar que las calles y aceras municipales se mantengan en buen estado de conservación física, orden y libres de obras u obstáculos que estorben su libre uso por toda la ciudadanía o que las deterioren" y "[e]stablecer y mantener un sistema de reparación y mejoramiento físico continuo de aceras, calles, callejones, plazas, parques y otras áreas municipales de dominio público."[34]

En esencia, resulta menester contestar la interrogante de si los ayuntamientos (municipios) responden por las reclamaciones de daños y perjuicios instadas en su contra por accidentes ocurridos en las carreteras o aceras pertenecientes al Gobierno Estatal, pero que, transcurren dentro de las demarcaciones municipales.

Recientemente, el Alto Foro tuvo ante sí una controversia con hechos similares a los que tenemos ante nuestra consideración.[35] Comenzó su ponencia exponiendo:

> La casuística interpretativa sobre el mantenimiento y conservación de las aceras se ha mantenido casi inalterada con el pasar del tiempo. Añadió, citando el caso de *Vélez v. La Capital*, que un [Municipio] era responsable del mantenimiento de las aceras a ambos lados de una [avenida estatal], incluyendo las reatas o jardineras, por lo que tenía el deber de mantenerlas en un buen estado de conservación.[36]

Asimismo, el Tribunal Supremo interpretó la normativa establecida en el Art. 15.005 de la *Ley de Municipios Autónomos*.[37] Sustancialmente,

---

[33] *Íd.*

[34] Véase Ordenanza Núm. 1, serie 2021-2022. (Aprobada el 22 de julio de 2021).

[35] *González Meléndez v. Municipio Autónomo de San Juan*, 2023 TSPR 95; 212 DPR ___.

[36] 77 DPR 701, 708 (1954).

[37] 21 LPRA § 4001.

enunció que para considerar proveerle inmunidad a la municipalidad con relación a las reclamaciones por daños y perjuicios en las vías o aceras de sus límites geográficos era forzoso que tales daños o perjuicios no fueran el resultado de actos u omisiones de funcionarios, agentes o empleados el ayuntamiento.[38]

En ese sentido, el Máximo Foro dictaminó que el "**factor determinante** para que los municipios no respondan en daños y perjuicios **es la existencia del vínculo directo entre un accidente y el hecho de que el mismo ocurra en una carretera o acera propiedad del Estado**".[39]

- III –

En el caso de marras, el MUNICIPIO Y ÓPTIMA recurrieron ante este Tribunal de Apelaciones para objetar la determinación, pronunciada el 12 de octubre de 2022 por el foro primario, disponiendo que el ELA no es parte indispensable en el caso. Ello puesto que el lugar donde ocurrieron los hechos fue en una acera, lo cual es jurisdicción del MUNICIPIO y no del Estado (ELA). Fundamentaron su proceder en que, al estar los procedimientos paralizados respecto al Gobierno, este no tendrá la oportunidad de defenderse de las alegaciones en su contra y, por tanto, sus intereses podrían quedar afectados por una sentencia dictada. No le asiste la razón. Veamos.

En el caso de epígrafe, los hechos ocurrieron en la acera de la Avenida Ponce de León en San Juan, Puerto Rico, la cual es jurisdicción y está bajo el control del MUNICIPIO, por lo que, de haber existido una condición peligrosa, controversia que no resolvemos en este momento, aun cuando no hubiera sido causada por el MUNICIPIO, este tiene el deber de mantenerla en buen estado de conservación, mantenimiento y realizar las reparaciones necesarias para incrementar la seguridad de los transeúntes que a diario utilizan las aceras de su pueblo.[40]

---

[38] *González Meléndez v. Municipio Autónomo de San Juan*, *supra*, pág. 102.
[39] Id., pág. 106. (énfasis nuestro).
[40] *González Meléndez v. Municipio Autónomo de San Juan*, *supra*, pág. 99.

Por consiguiente, como el Estado no posee jurisdicción ni el control de la acera donde ocurrieron los hechos, concluimos que no es parte indispensable en el caso. En virtud de lo cual, confirmamos la determinación del foro primario y por tanto los procedimientos podrán continuar en su ausencia sin que esté afectado por ningún otro procedimiento presentado ante otro foro.

**- IV –**

Por los fundamentos antes expuestos, ***expedimos*** el auto de *Certiorari* instado el 12 de diciembre de 2022 y ***confirmamos*** la *Resolución* dictaminada el 12 de octubre de 2022 por el Tribunal de Primera Instancia, Sala Superior de San Juan.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones