TRIBUNAL DE APELACIONES
PANEL I

| MARÍA RIVERA HERNÁNDEZ | | |
|---|---|---|
| Demandante - Recurrida | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón |
| v. | TA2025CE00453 | |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO, SEGURO X, COMPAÑÍA Y OTROS | | Caso núm.: BY2024CV03899 (504) |
| Demandados-Peticionarios | | Sobre: Caída |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2025.

El Tribunal de Primera Instancia ("TPI") denegó desestimar una reclamación, en cuanto a un municipio y su aseguradora, en conexión con una caída en una jardinera adyacente a una vía estatal. Según se explica en detalle a continuación, concluimos que procede la desestimación solicitada en virtud de la norma recientemente adoptada a los efectos de que un municipio no responde por accidentes en vías o aceras estatales.

I.

En julio de 2024, la Sa. María Rivera Hernández (la "Demandante") presentó la acción de referencia, sobre daños y perjuicios (la "Demanda"), en contra, en lo pertinente, del Estado Libre Asociado de Puerto Rico (el "ELA"). Alegó que, el 1 de septiembre de 2023, mientras caminaba por una jardinera (la "Jardinera") aledaña a la Carretera Estatal PR-6671, frente al Cementerio Municipal en el Municipio de Vega Baja, sufrió un "aparatoso accidente", debido a un desnivel ocasionado por una "servidumbre" sin tapa o protección. Aseveró que el accidente le

ocasionó golpes y traumas en diversas partes de su cuerpo, para lo cual necesitó asistencia médica. Además, sostuvo que continuaba con angustias físicas y daños emocionales y mentales debido al accidente.

La Demandante alegó que el lugar donde ocurrió el accidente le pertenece al ELA y que este fue negligente al incumplir con su deber de mantener el área en buen estado o libre de peligro. Destacamos que la Demandante no incluyó al Municipio de Vega Baja (el "Municipio"), ni a su aseguradora, como partes demandadas.

En una enmienda a su contestación a la Demanda, el ELA alegó que, para la fecha en la que ocurrió el accidente, existía un acuerdo colaborativo entre el Departamento de Transportación y Obras Públicas (el "DTOP") y el Municipio, el cual incluía el mantenimiento de la Jardinera. Añadió que dicha área no era peatonal y que el hoyo que ocasionó el accidente es un "pull box spare", presuntamente eléctrico, que no pertenece al DTOP.

El 17 de enero de 2025, el ELA presentó una *Demanda Contra Tercero* en contra del Municipio y su aseguradora, Multinational Insurance Company (la "Aseguradora"). En síntesis, alegó que, debido al *Acuerdo Colaborativo de Transferencia de Fondos para el Mantenimiento de Áreas Verdes en las Carreteras* suscrito por el DTOP y el Municipio (el "Acuerdo"), el Municipio tenía a su cargo el mantenimiento del lugar donde ocurrió el accidente. Por consiguiente, afirmó que, si la Demandante lograba probar sus alegaciones, le correspondía al Municipio y la Aseguradora responderle directamente por los daños.

El 9 de abril, el Municipio y la Aseguradora presentaron una *Solicitud de Desestimación de Demanda contra Tercero* (la "Moción"). En esencia, alegaron que dicha reclamación debía desestimarse debido a que (1) el ELA incumplió el requisito de notificar su

intención de demandar al Municipio dentro del término jurisdiccional de 90 días; (2) la reclamación en su contra estaba prescrita; y (3) en virtud de la letra clara del Artículo 1.053 del Código Municipal, 21 LPRA sec. 7084(g), están prohibidas las reclamaciones de daños contra los municipios por caídas o accidentes ocurridos en las carreteras o aceras estatales.

Oportunamente, la Demandante y el ELA se opusieron a la Moción; el Municipio (y la Aseguradora) replicaron.

El 15 de agosto, el TPI notificó una *Resolución* mediante la cual denegó la Moción (la "Resolución"). Razonó que el Municipio fue oportunamente notificado de la causa de acción, mediante una carta cursada por la Demandante con fecha del 27 de noviembre de 2023; que la causa de acción en contra del Municipio y la Aseguradora no estaba prescrita; y que el Artículo 1.053 del Código Municipal, *supra*, no aplicaba debido a que el Municipio tenía el control del área donde presuntamente ocurrió el accidente debido al Acuerdo. Además, destacó que en el Acuerdo el Municipio se comprometió a incluir al DTOP en sus pólizas de seguro.

El 2 de septiembre (primer día laborable luego del sábado 30 de agosto), el Municipio y la Aseguradora solicitaron la reconsideración de la Resolución, lo cual fue denegado por el TPI mediante una *Resolución* notificada el 5 de septiembre.

Aún inconformes, el 15 de septiembre, el Municipio y la Aseguradora presentaron el recurso que nos ocupa; formularon los siguientes seis (6) señalamientos de error:

PRIMER ERROR
El TPI erró al determinar que se había cumplido con el requisito de notificación sustentado únicamente en la notificación de la Demandante al Municipio y obviando el hecho incontrovertido de que el ELA no cumplió con este requisito.

SEGUNDO ERROR
El TPI erró al determinar que la Demanda contra Tercero promovida por el ELA contra los Peticionarios es una reclamación contractual por la mera existencia

de un acuerdo colaborativo, a la que le aplica el término prescriptivo de 4 años, a pesar de que las alegaciones de la Demanda contra Tercero se circunscribieron a la reclamación extracontractual promovida por la Demandante y que no existe alegación alguna de incumplimiento contractual de los comparecientes.

### TERCER ERROR

El TPI erró al denegar la solicitud de desestimación de la Demanda Enmendada y de la Demanda contra Tercero promovida por los Peticionarios, a pesar de (1) que el accidente objeto de la presente controversia ocurrió en el área verde de una carretera estatal, (2) que el Artículo 1.053 del Código Municipal prohíbe las acciones en daños y perjuicios contra los municipios cuando ocurren accidentes en las carreteras o aceras estatales, y (3) que en *González Meléndez v. Municipio de San Juan*, 212 DPR 601 (2023), el TS dispuso expresamente que la prohibición del Artículo 1.053 del Código Municipal no admite excepción, es "una lista *numerus clausus* establecida por el legislador, la cual sólo puede ser variada por éste", y que cuando existe un "vínculo directo entre un accidente y el hecho de que éste ocurra en una carretera o acera propiedad del Estado [....] resulta inmaterial discutir si el Municipio mantuvo la servidumbre de paso en condiciones razonables, pues el legislador limitó su responsabilidad como cuestión de política pública".

### CUARTO ERROR

El TPI erró al emitir la Resolución recurrida en contravención a la Regla 36.4 de Procedimiento Civil y no establecer los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, a pesar de que la Regla 10.2 de Procedimiento Civil dispone que cuando se alega que la reclamación no justifica la concesión de un remedio y se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final, lo que incluye cumplir con la Regla 36.4 de Procedimiento Civil.

### QUINTO ERROR

El TPI erró al denegar la solicitud de desestimación de la Demanda Enmendada y de la Demanda contra Tercero promovida por los Peticionarios al determinar que no aplica la prohibición del Artículo 1.053 del Código Municipal y su jurisprudencia interpretativa por la mera existencia del Acuerdo Colaborativo, a pesar de que el referido Acuerdo Colaborativo se circunscribe al mantenimiento de la vegetación en las áreas a trabajar y a la remoción de propaganda en lugares no autorizados y no incluye el mantenimiento del desagüe en el que alegadamente tropezó la Demandante, y a pesar de que los Peticionarios presentaron una declaración jurada que dispone expresamente que el Acuerdo Colaborativo no incluye el mantenimiento del

desagüe en el que alegadamente tropezó la Demandante y ninguno de los Recurridos presentó prueba documental alguna que controvirtiera lo anterior.

### SEXTO ERROR

El TPI erró al denegar la solicitud de desestimación de la Demanda Enmendada y de la Demanda contra Tercero promovida por los Peticionarios al determinar que no aplica la prohibición del Artículo 1.053 del Código Municipal y su jurisprudencia interpretativa por la mera existencia del Acuerdo Colaborativo, a pesar de que el relevo de responsabilidad contenido en el Acuerdo Colaborativo es ultra vires y contraria al principio constitucional de separación de poderes toda vez que (1) es contraria a la letra clara del Artículo 1.053 del Código Municipal y a la política pública que justificó su aprobación, y (2) excede los poderes otorgados por el legislador a los municipios mediante la aprobación del Código Municipal. En este sentido, al incluir en el Acuerdo Colaborativo el relevo de responsabilidad y asumir la responsabilidad por daños a terceras personas el Ejecutivo Municipal de Vega Baja excedió las facultades que le otorga el Código Municipal y usurpó el poder legislativo, en contravención al principio constitucional de separación de poderes.

El 6 de septiembre le ordenamos a los recurridos mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar la Resolución. La Demandante y el ELA presentaron sus correspondientes escritos. En esencia, plantearon que, a través del Acuerdo, el Municipio había renunciado a la inmunidad que le otorga la ley y, además, que era el Municipio quien, en virtud del Acuerdo, tenía el control del mantenimiento de la Jardinera. Resolvemos.

## II.

La titularidad, jurisdicción y el mantenimiento de las carreteras se origina de diferentes marcos jurídicos. El Artículo 1-02(a) de la Ley Núm. 54 de 30 de mayo de 1973 (la "Ley Núm. 54"), según enmendada, conocida como Ley de Administración, Conservación y Política de las Carreteras Estatales de Puerto Rico, 9 LPRA sec. 2102, establece que es una carretera estatal:

> [...] cualquier vía pública estatal para el tránsito vehicular que haya sido construida de acuerdo a alguna Ley del Estado Libre Asociado de Puerto Rico o que, habiendo sido construida por una Agencia o Corporación Pública, Estatal o Federal o por un

municipio, haya sido transferida legalmente al Departamento de Transportación y Obras Públicas para su custodia y conservación. [...] .

Asimismo, el paseo es "la parte lateral de una carretera entre la zona de rodaje y la cuneta, o entre la zona de rodaje y la propiedad privada adyacente donde no hay cuneta". Artículo 1-02(c) de la Ley Núm. 54, 21 LPRA sec. 2101(c). Por otro lado, la servidumbre de paso es "la superficie de terreno ocupada por la carretera, e incluirá el área de rodaje, paseos, cunetas y terrenos adyacentes hasta la colindancia con la propiedad privada". Artículo 1-02(f) de la Ley Núm. 54, 21 LPRA sec. 2101(f). De acuerdo con lo anterior, **el concepto de carretera contempla las aceras como parte de estas, por lo cual, si la carretera es de jurisdicción estatal, la acera también lo es**. *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 619 (2023) (el "Precedente").

De otra parte, el Artículo 403 del Código Político, 3 LPRA sec. 421,[1] le impone al Secretario de Transportación y Obras Públicas el deber de conservación de las carreteras a su cargo. *Rivera Jiménez v. Garrido & Co.*, 134 DPR 840, 851 (1993). De esta forma, "el Estado reconoció su obligación y consintió a responder de los daños que pueda ocasionar la falta de mantenimiento y conservación de las carreteras". *Íd.* En conexión, el Artículo 404 del Código Político, 3 LPRA sec. 422,[2] autorizó acciones por daños causados a personas o propiedades "por desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación...".

---

[1] En lo pertinente, el Artículo 403 del Código Político, *ante*, establece como sigue:
El Secretario de Transportación y Obras Públicas hará que las carreteras del Gobierno de Puerto Rico a su cargo se mantengan en buen estado de conservación y que se siembre el arbolado necesario a lo largo de las carreteras para proporcionarles sombra, renovando los citados árboles siempre que haga falta.

[2] El Artículo 404 del Código Político, *ante*, establece lo siguiente:
El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios por desperfectos, falta de reparación o de protección suficiente para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Transportación y Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos.

El Artículo 404 del Código Político, *ante*, "[c]onstituye el precepto especial a utilizarse para evaluar las acciones por daños que ocasionen a personas o propiedades en las vías públicas estatales, cuando los mismos fueron motivados por daños emergentes de desperfectos, falta de reparación o de protección suficientes". *Dones Jiménez v. Aut. De Carreteras*, 130 DPR 116, 119 (1992). Claro está, dicho estatuto "no convierte al Estado en un garantizador absoluto de la seguridad de las personas que utilizan las carreteras públicas". *Rivera Jiménez*, 134 DPR a la pág. 851, citando a *Rivera v. Pueblo*, 76 DPR 404, 407 (1954).

Por su parte, la Ley Núm. 49 de 1 de diciembre de 1917, 9 LPRA secs. 12-18, conocida como Ley de Travesías de Puerto Rico (la "Ley de Travesías"), se aprobó con el propósito de imponerle al entonces Comisionado del Interior de Puerto Rico (luego al Secretario de Transportación y Obras Públicas), la obligación ministerial de conservar y mantener los trozos de carreteras insulares que atraviesan las zonas urbanas de los pueblos, conocidos como travesías. Véase, Artículo 1 de la Ley de Travesías, 9 LPRA sec. 12.

De acuerdo con la Ley de Travesías, los municipios tendrán jurisdicción sobre las dos zonas urbanizadas, a ambos lados de la travesía, que incluyen aceras y reatas o jardineras, y podrán fijar las alineaciones para construcción de edificios y aceras de acuerdo con lo que dispongan las ordenanzas municipales. Véase, Artículo 2 de la Ley de Travesías, 9 LPRA sec. 13; *Vélez v. La Capital*, 77 DPR 701, 707 (1954).

No obstante, según lo dispuesto en el Precedente, el Artículo 1.053(g) del Código Municipal de Puerto Rico, 21 LPRA sec. 7084(g), no permite las acciones de daños y perjuicios en contra de los municipios "cuando ocurran accidentes en las carreteras o aceras estatales". Resaltamos que, en cuanto al inciso (g) del Artículo

15.005 de la derogada Ley de Municipios Autónomos, equivalente al Artículo 1.053(g) del vigente Código Municipal, en el Precedente, *González*, 212 DPR a la pág. 621, se dispuso lo siguiente:

> [...] ***Nótese que el Art. 15.005 de la Ley de Municipios Autónomos, supra, no deja margen a otra interpretación en tanto y en cuanto específicamente libera de responsabilidad a los municipios cuando ocurren accidentes en carreteras o aceras estatales, entre otras cosas. Por lo tanto, resolvemos que el Municipio posee inmunidad al amparo del inciso (g) del Art. 15.005 de la Ley de Municipios Autónomos, supra.*** [...] (Énfasis en el original).

Por consiguiente, si se cumple cualquiera de las instancias del Artículo 15.005 de la Ley de Municipios Autónomos, "entonces se está ante una limitación para demandar a los municipios, para la cual no existe una excepción en ley. Se trata, pues, de una lista *numerus clausus* establecida por el legislador, y solo él puede variarla". *Íd.*, a la pág. 620. El "factor determinante para que los municipios no respondan por reclamaciones de daños y perjuicios es la existencia del vínculo directo entre un accidente y el hecho de que este ocurra en una carretera o acera propiedad del Estado". *Íd.*

III.

En atención a la interpretación del Artículo 1.053(g) del Código Municipal, *ante*, adoptada por el Tribunal Supremo en el Precedente, la norma es que, si la carretera es estatal, las aceras, los paseos y las servidumbres a los lados de la carretera, automáticamente también lo son. **Además, aun si un municipio ejerce el control sobre dichas áreas e incurre en negligencia que ocasione un daño, el municipio no responderá**. El Tribunal Supremo fue tajante al respecto: "...resulta inmaterial discutir si el Municipio mantuvo la servidumbre de paso en condiciones razonables".

Por consiguiente, ante una limitación para demandar que solo puede ser modificada por la Asamblea Legislativa, resulta inmaterial si un municipio ha suscrito con el DTOP un "acuerdo de

colaboración" para el mantenimiento de las áreas aledañas a las carreteras estatales, como ocurrió en el caso de autos. Adviértase que, incluso, el deber de los municipios al respecto ha estado por décadas, y continúa estando, plasmado en la Ley de Travesías. No obstante, ello no incidió sobre la adopción, por vía del Precedente, de la antedicha norma de inmunidad absoluta.

Tampoco podemos concluir que un municipio pueda renunciar válidamente a esta inmunidad. Adviértase que la norma es que "[l]as partes pueden acordar cualquier cláusula **que no sea contraria a la ley**, a la moral o al orden público". 31 LPRA sec. 9753. Por tanto, no es viable, como cuestión de derecho, concluir que el Municipio pueda haber acordado renunciar a la inmunidad que en estas circunstancias le concede la ley. Incluso, al considerar que fue el propio ELA quien adoptó la legislación pertinente, resulta en un contrasentido que sea esa misma parte quien ahora alegue que, a través de un acuerdo, se ha privado al Municipio de la inmunidad conferida vía el estatuto pertinente.

Así pues, concluimos que prevalece la norma clara y expresa, adoptada por el propio ELA vía legislación, a los efectos de que los Municipios no responden por accidentes en las servidumbres de las carreteras estatales. Ello independientemente del deber que puedan tener los municipios en cuanto a dichas áreas (por virtud de la Ley de Travesías o de algún acuerdo colaborativo) e independientemente del control real que los municipios puedan ejercer sobre las mismas. Por ser contrario a la ley, sería nulo cualquier acuerdo mediante el cual se pretenda una renuncia de un municipio a la referida inmunidad estatutoria.

Por otra parte, aun partiendo de la premisa de que un municipio pudiese válidamente renunciar a la inmunidad que le confiere la ley en estas circunstancias, concluiríamos que, en este caso, el Municipio no renunció a la misma a través del Acuerdo. Ello pues del Acuerdo no surge la renuncia "clara, terminante e

inequívoca" que sería necesaria en este contexto. *Chico v. Editorial Ponce,* 101 DPR 759, 778 (1973); *Quiñones Quiñones v. Quiñones Irizarry,* 91 DPR 225, 265-266 (1964).

En efecto, la norma es que la renuncia de un derecho afirmativamente concedido por ley requiere que la parte renunciante conozca de forma cabal su derecho y haya tenido la intención clara de abandonarlo. *Fenning v. Tribunal,* 96 DPR 615, 622 (1968); *Mendoza Aldarondo v. Asociación Empleados,* 94 DPR 564, 577 (1967) ("[p]ara que se entienda que una persona renuncia a sus derechos debe tener cabal y actual conocimiento de los mismos y su intención de renunciarlos debe ser clara").

De hecho, precisamente a consecuencia de la determinación de política pública adoptada a través de los cambios al Artículo 15.005 de la derogada Ley de Municipios Autónomos, 21 LPRA sec. 4705, y, luego, por la promulgación al Artículo 1.053(g) del Código Municipal, *ante,* según interpretado en el Precedente, **el ELA asumió la responsabilidad de responder** incondicionalmente por los daños ocasionados por la negligencia de un municipio en el cumplimiento de su deber de mantener en estado adecuado una acera, servidumbre o paseo de una carretera estatal, o por la negligencia del municipio al realizar cualquier trabajo en estas áreas adyacentes a las carreteras estatales.

Por tanto, la Demandante carece de una causa de acción de daños y perjuicios contra el Municipio y la Aseguradora y, por la misma razón, el ELA carece de una reclamación contra dichas partes[3]. Es insostenible pretensión del ELA de burlar la inmunidad que el propio ELA le concedió a los municipios a través de una cláusula contractual mediante la cual se pretende que el municipio

---

[3] En este caso particular, aun partiendo de la premisa de que el Municipio podría renunciar válidamente a su inmunidad y que lo hizo aquí a través del Acuerdo, de todas formas procedía la desestimación de la reclamación en su contra. Ello porque del Acuerdo surge que la responsabilidad allí asumida por el Municipio no se extiende al mantenimiento del hoyo que la Demandante alega ocasionó su accidente, sino únicamente al mantenimiento del ornato de las áreas verdes de la Jardinera.

le indemnice precisamente por los accidentes cubiertos por la referida inmunidad.

Por otro lado, tampoco existe reclamación contra la Aseguradora del Municipio, pues no se puede extender el contrato de seguros para cubrir una responsabilidad que no tiene el asegurado. *Admor. FSE v. Flores Hnos. Cement Prods.*, 107 DPR 789, 792 (1978). Resaltamos que, de conformidad con lo establecido en *Admor. FSE*, 107 DPR a la pág. 794, al estar ante una situación de inexistencia de causa de acción (en vez de alguna defensa especial que solo el asegurado podría invocar), la aseguradora no responde:

> No se trata en el caso ante nuestra consideración de una defensa que pudiera levantar el asegurado y que, por consiguiente, esté impedida de derivar beneficio de ella la compañía aseguradora. Se trata, por el contrario, en el presente caso de la inexistencia de una causa de acción contra el Municipio asegurado. Por imperativo del arte de razonar correctamente--lógica --debemos concluir que, no existiendo una causa de acción ejercitable contra el Municipio, no puede venir a responder una aseguradora por lo que en derecho es inexistente. El contrato de seguros no se puede extender para cubrir una responsabilidad que no tiene el asegurado.

Por tanto, también erró el TPI al mantener a la Aseguradora como demandada en este caso, pues aquí no existe una causa de acción contra el Municipio debido a que el incidente objeto de la reclamación ocurrió en la servidumbre de una carretera estatal. Es decir, no se trata de una defensa esgrimida por el Municipio que la Aseguradora pudiese estar impedida de invocar a su favor. En vez, estamos ante la inexistencia de una causa de acción en contra del asegurado, entiéndase el Municipio, lo cual ocasiona que la Aseguradora no tenga una reclamación por la cual responder.

IV.

Por los fundamentos expuestos, se expide el auto de *certiorari* solicitado y se revoca la Resolución recurrida. Consecuentemente, se desestiman, con perjuicio, las reclamaciones contra el Municipio

y la Aseguradora. Se devuelve el caso al TPI para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones